[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff, whose maiden name is Joan D. Mulac, and the defendant were married on October 20, 1979, at New Fairfield, Connecticut. The plaintiff has resided continuously in the State of Connecticut for at least one year immediately prior to the date of the complaint. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of the marriage and no minor children have been born to the plaintiff wife since the date of marriage of the parties. Neither party was received state or municipal assistance.
The plaintiff is fifty-seven years old. She is a high school graduate and also has two years of college at Rollins College in Florida, studying drama. She then completed her third year at Fresno State College in California in drama. She does not have a college degree. She is eligible for an associate degree at Rollins College, which she attended between 1957 and 1960. She also studied philosophy between 1973 and 1974, at the University of Bridgeport and at the Yale Radio School between 1974 and 1975. Between 1991 and 1992, she studied interior design at Western Connecticut State University, where she received a certificate after completing each course. She is in good health.
The plaintiff has held various employment positions since 1960. She has worked in sales. She has also taught acting to children between approximately 1970 and 1971. Between approximately 1977 and 1983, she did advertising sales work for the Western Connecticut State University newspaper. She was then employed in 1984, at the Candlewood Playhouse full time from spring to fall, where she was in charge of group ticket sales. She then went to New York in 1985, to further her acting career and has continued in her acting career since 1985. In addition, between 1988 and 1992, she averaged twenty hours weekly working as a perfume model. She is presently involved in acting and commercial modeling. All of her jobs between 1979 and 1995, were CT Page 8412 part time.
The plaintiff's financial affidavit dated September 19, 1996, shows income from her principal employment as a gross weekly of $148, and a net of $116 that she receives from acting. She also has income from modeling/acting of a gross of $222 per week with business expenses of $153 per week, and a net of $69 per week. In addition, she has rental income of $346 a week at her home for two tenants. The two tenants pay approximately $500 monthly each and, in addition, her son pays her $500 monthly. She has a mortgage payment on her Westport home of $334 weekly. The plaintiff's financial affidavit, under the category of other property, lists assets with a total value of $25,000. The major part of those assets consists of a hot tub that cost $5600 and is at the family residence at Bigelow Road in New Fairfield. She used funds from her mother's estate towards the purchase of that hot tub. There is also a sound system at the family home that cost in excess of $3000. The plaintiff contributed $2000 towards that sound system. In addition, there are oriental rugs with a total value of approximately $1500 that came from her mother's estate. When the parties separated, the plaintiff took certain items of furniture from the family home that she presently has. The plaintiff's jewelry includes a wedding ring with a fair market value of $7000, and two fur coats, one with a fair market value of $3000 and the second with a fair market value of $2500. The Shadow Fox coat that she owns was purchased for $3000 from her inheritance money. The plaintiff owns a 1988 Chevrolet Camaro that was purchased in 1989, with a present value of $1000 that is in the name of the plaintiff and the defendant. That vehicle was involved in a motor vehicle accident for which there was insurance coverage. The insurance company paid $2156 for the damages and the defendant cashed the check and retained the money. He used approximately $1000 of the insurance car damage check to renew the automobile insurance. The parties have Prudential security funds with a value of $81,808 that are in both names. These funds were accumulated during the course of the marriage. All of those securities came from income from the defendant. The plaintiff has life insurance on the defendant's life in which the plaintiff is the owner. That life insurance was taken out when the parties married. The defendant has paid the premiums during the course of the marriage. It has a cash surrender value of $13,797. The defendant had life insurance since he was age eighteen. The cash surrender value from his original policy was rolled over into the present policy. Since 1979, all of the premiums have been paid by the defendant. CT Page 8413
The plaintiff presently resides at her home at 6 Fairport Road, Westport, Connecticut. She purchased that home in September, 1975. It is in her name only. She lives there with her adult son and also rents out some rooms. In approximately 1989, the defendant did plumbing and air conditioning work at the plaintiff's home in Westport where he was paid approximately $20,000. The court finds that the plaintiff's Westport home has a fair market value of $255,000, a mortgage of $143,500 and an equity of $111,500. Of the approximate $20,000 that the plaintiff paid to the defendant for labor and materials at her Westport home, he used approximately one half for the materials that went into the home and approximately one half for the Camaro that he purchased for her. The present promissory note on the Westport home that is secured by a mortgage deed was cosigned by the defendant.
The defendant is fifty-eight years old and he is in good health. He was previously married and has adult children from that marriage. He has been in the plumbing business since 1958 or 1959. His education consists of graduation from a technical trade school, after which he worked as a machinist and then went into the plumbing business. Most of his jobs involve repairs and remodeling. He does not have any employees. His prior divorce was in January of 1977.
The defendant's financial affidavit shows a Savings Bank of Danbury account with a balance of $11,354.90. That is money that he has saved from his business. He also has an account at the New Milford Bank and Trust with a balance of $7939. That account is used for his business. He also has $29,516 in Prudential Securities that was opened after the plaintiff had received her inheritance money and had placed her funds in a separate account. He also has an IRA with a balance of $5350. He had initially put $2000 into the IRA and it has grown to the present balance. His financial affidavit also shows that he has $34,000 from his mother's estate. His mother died in August of 1994. That asset is in an account in the Union Savings Bank. All of the bank accounts, as well as the Prudential security account were accumulated during the course of the marriage.
The defendant had $18,000 when the parties married that was used towards renovations of the family home. The defendant owns property at Hillview Drive, New Fairfield, Connecticut with a fair market value of $100,000 and no mortgage. That was property CT Page 8414 that he owned at the time of his first divorce. He purchased his ex-wife's interest in that property. He also owns a lot at Woodridge Lake, Goshen, Connecticut with a fair market value of $50,000. That property is still owned with his ex-wife. His equity in that property is $25,000.
Prior to March of 1996, there was some damage done to the family home that was covered by insurance. The insurance company paid $1928.27 for that damage. The defendant cashed that check and used the funds to repair the damage to the home.
The parties purchased property located at 31 Bigelow Road in New Fairfield, Connecticut in joint names on September 18, 1979, for $52,500. The court finds that the present fair market value of that property is $220,000 and that it does not have any mortgage. The purchase price was paid in part from a $26,000 loan from the plaintiff's mother. The plaintiff and the defendant lived at that residence during their marriage. The balance of the purchase price was financed through a mortgage with the New Milford Savings Bank. Major renovations were done to this home. The parties are in dispute as to the source of the income that was used for the renovations to this home. In 1990, the plaintiff inherited approximately $125,000 from her mother's estate. She claims that approximately $75,000 of that inheritance was used for renovations to the home. Defendant's exhibit two is a list of expenses produced at her deposition for items that she claimed she paid for the family home renovations. The total on that list of $74,330.46 has a typographical error and the total adds up to $66,159.10. The court is further excluding from that $66,159.10 total the following items: (a) bedroom furniture, $1012.62, as the plaintiff is keeping that furniture; (b) umbrella stand, $169.60, as the plaintiff is keeping that; (c) table lamp, $253.55, as the plaintiff is keeping that item; (d) patio furniture, $1686; and (e) additional furniture, $3346 and $422 and $944 and $1402 and $189. The court is also excluding the fuel oil charge of $274, the dinner charge of $178.10 and the mirrors, $453. The total excluded items amounts to $10,329.87, which when deducted from the $66,159.10, leaves an allowed amount that the plaintiff expended towards renovations to the family home from her inheritance of $55,829.23. In addition to the $18,000 that the defendant had at the time of marriage that went into the renovation of the family home, he also paid in excess of $3500 in subsequent renovations. The first mortgage on the family home was paid off in approximately 1992. The so-called "doll house" at the family residence did not have a certificate of occupancy issued CT Page 8415 for it and the parties eventually had to stop renting the property as a result of action brought against them by town officials. The rental income that was received was used to pay health and life insurance with the balance used for normal food expenses for the parties. As a result of a suit brought by the town regarding the use of the "doll house," the defendant has incurred legal fees for which there is a balance of $3754. He has already paid $2000 towards those legal fees. The defendant paid the plaintiff's mother the $13,000 approximately three years after the parties were married. The $13,000 that the defendant repaid to the plaintiff's mother on the $26,000 loan came from his earnings. During the course of the marriage, the defendant made the payments for the mortgage, taxes and insurance on the family home.
The parties bought a condominium in both names known as Bostwick Arms Condo, No. 17, New Milford, Connecticut on April 30, 1993, for $45,000. The money for purchasing that condo came from the defendant's income. He has paid all the taxes and common charges on the property since 1992.
The parties filed joint income tax returns for the calendar years 1990 through 1994. In the calendar year 1990, the plaintiff had net income as a consultant of $9442, and the defendant had net income from his plumbing and heating business of $7745. In the calendar year 1991, the plaintiff had net income from her consulting business of $2333, and the defendant had net income from his plumbing and heating business of $7749. During the calendar year 1992, the plaintiff had net income from her consulting business of $1240, and the defendant net income from his plumbing business of $10,382. During the calendar year 1993, the plaintiff had net income from her consulting business of $3509, and the defendant had net income from his plumbing and heating business of $12,691. In addition, the plaintiff had wages of $2175. During the calendar year 1994, the plaintiff had income from her consulting business of $4132, and the defendant had income from his plumbing and heating business of $4446. During the calendar year 1995, the plaintiff had taxable wages of $7714, and the defendant had business income of $9327.
The plaintiff has listed a number of items of personal property on schedule A of her proposed orders dated September 19, 1996, coded No. 116. Schedule A consists of sixty-nine separate listed items that she seeks to have turned over to her from the marital residence. During the trial, the parties reached an CT Page 8416 agreement regarding a number of items of personal property. At the present time, the items of personal property in dispute consist of items (11) sound system and speakers; (37) ivory elephant tusks; and (47) sound system cabinet. The plaintiff has deleted from her request items (22), (23), (24), (40), (41), (42), (43), (44), (45), (46), (48), (49), (59), (60), (61), (64), (65), (66), (67) and (69). The parties further stipulated to the fact that the plaintiff already has in her possession and may retain items: (28) a lounge velvet chair; (31) two dressers and a dresser mirror; (32) a nightstand and lamp; (33) a bedroom wicker chair; and (34) a double bed. The ivory tusks that are in dispute originally belonged to the plaintiff and her stepfather, and were a gift from the plaintiff to the defendant for his birthday approximately two years ago. The disputed stereo was purchased for $3000. The defendant paid $1000 of that price and the plaintiff $2000.
This court has considered the provisions of § 46b-82
regarding the issue of alimony, and has considered the provisions of § 46b-81(c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders.
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved and each of the parties is declared to be single and unmarried.
B. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of either party.
C. BY WAY OF PROPERTY DIVISION
1. All of the plaintiff's interest in the Westport, Connecticut property is assigned to the plaintiff. She is to hold the defendant harmless from the mortgage on that property.
2. All of the defendant's interest in the Hillview Drive, New Fairfield, Connecticut property is assigned to the defendant.
3. All of the defendant's interest in the lot at Woodridge Lake, Goshen, Connecticut is assigned to the defendant.
4. All of the defendant's interest in certain land in Maine CT Page 8417 is assigned to the defendant.
5. The following assets are ordered divided equally between the parties: (a) Prudential Securities in the approximate amount of $81,807; (b) Prudential Securities in the approximate amount of $29,516; (c) IRA in the approximate amount of $5350; (d) proceeds of defendant's interest in his mother's estate, in the approximate amount of $34,000, held at the Union Savings Bank; and (e) Savings Bank of Danbury account in the approximate amount of $11,354.90.
6. The defendant's account at the New Milford Bank and Trust in the approximate amount of $7939 is awarded to the defendant.
7. The defendant's Prospect Street High Income Fund in the approximate balance of $3000 is awarded to the defendant.
8. All of the defendant's interest in his 1989 Ford with a value of $3000 and 1972 International with a value of $200 is awarded to the defendant.
9. All of the plaintiff's interest in the 1988 Chevrolet Camaro is awarded to the plaintiff. The defendant is to execute whatever documents are necessary to transfer title solely in her name.
10. All of the furniture, jewelry, oriental rugs and fur coats in the possession of the plaintiff are awarded to the plaintiff.
11. The hot tub is awarded to the defendant.
12. The sound system and speakers, sound system cabinet, and ivory elephant tusks that are in dispute are all awarded to the defendant.
13. All of the remaining items of furniture in the possession of the plaintiff are awarded to the plaintiff, and all of the remaining items of furniture in the possession of the defendant are awarded to the defendant.
14. The life insurance policy shown on the plaintiff's financial affidavit together with a cash surrender value of approximately $13,797 are awarded to the plaintiff. CT Page 8418
15. The People's Bank account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
16. The Nuveen Fund shown on the plaintiff's financial affidavit with a balance of $19.60 is awarded to the plaintiff.
17. The plaintiff is to pay all liabilities shown on her financial affidavit and hold the defendant harmless therefrom.
18. The defendant is to pay the liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom.
19. The defendant is to transfer to the plaintiff all of his right, title and interest in the Bostwick Arms, New Milford condominium. She is to hold the defendant harmless from any condominium fees, taxes or other liabilities involving the condominium.
20. The plaintiff is to transfer to the defendant all of her right, title and interest in the property located at 13 Bigelow Road, New Fairfield, Connecticut. The defendant is to execute a promissory note secured by a mortgage deed on that premises in the face amount of $77,500. The promissory note is to be due and payable without interest on January 31, 1997.
21. The defendant is to pay to the plaintiff $2156 for the automobile insurance check that he retained.
22. All of the financial orders entered herein are considered to be in full discharge of any claim that the plaintiff may have had against the defendant arising out of his retaining the automobile damage check and/or his retaining the homeowner's damage check.
23. All of the transfers of assets are to take place simultaneously on December 2, 1996.
D. BY WAY OF ALIMONY
1. No alimony is awarded in favor of either party.
E. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to counsel for the defendant CT Page 8419 for signature and filing.
Axelrod, J.